Francis A. Sullivan *vs.* Town of Brookline.

Norfolk. November 4, 1993. - January 26, 1994.

Present: Liacos, C.J., Nolan, Lynch, O'Connor, & Greaney, JJ.

*Negligence*, One owning or controlling real estate, Snow and ice. *Snow and Ice.*

At the trial of a claim against a town for personal injuries incurred by the plaintiff when he slipped and fell on an icy entrance ramp at a health center owned and operated by the town, the judge erred in denying the town's motion for judgment notwithstanding the verdict, where there was no evidence from which the jury could reasonably have concluded that an act or omission by the town changed the condition of the ice on which the plaintiff fell from its natural state. [827-830]

Civil action commenced in the Superior Court Department on September 19, 1990.

The case was tried before *Paul A. Chernoff*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*George F. Driscoll, Jr.*, Assistant Town Counsel, for the defendant.

*Karen M. Coppa* for the plaintiff.

Greaney, J. We granted an application by the defendant, the town of Brookline (town), for further appellate review to decide whether the town should be held liable for injuries incurred by the plaintiff, Francis A. Sullivan, when he slipped and fell on an icy entrance ramp at a health center owned and operated by the town. The Appeals Court, in an unpublished memorandum of decision entered pursuant to its rule 1:28, 34 Mass. App. Ct. 1112 (1993), upheld a judgment for the plaintiff entered in the Superior Court on a jury verdict. The town had filed timely motions for directed verdict and for judgment notwithstanding the verdict, Mass. R.

Civ. P. 50 (a) and (b), 365 Mass. 814 (1974), to test the sufficiency of the plaintiff's evidence. We conclude that the plaintiff's evidence was insufficient as a matter of law. Accordingly, we reverse and direct the entry of judgment for the town.

In deciding the case, we consider the evidence most favorable to the plaintiff, *Afienko* v. *Harvard Club of Boston*, 365 Mass. 320, 326 (1974), and inquire whether upon any reasonable view of the evidence, there is a combination of facts from which a rational inference may be drawn in the plaintiff's favor. *Chase* v. *Roy*, 363 Mass. 402, 404 (1973). See *Alholm* v. *Wareham*, 371 Mass. 621, 627 (1976).

The jury could have found the following facts. The town owned and operated the health center at 11 Pierce Street. The health center building has several entrances, one of which is at the side of the building on Pierce Street. This entrance has both stairs and a ramp. The ramp is intended for delivery purposes, but it is used frequently by both employees and visitors for access to the health center.

On Thanksgiving Day, November 23, 1989, a storm brought freezing rain and snow to the Boston area, including the town. The storm ended at approximately midnight on November 23. The town had a full crew of employees plowing roads and sidewalks during the day of November 23, through that night, and on the morning of November 24. (The plaintiff acknowledged that, when he worked for the town's highway department, the town's employees would first plow and sand the roads, then clear the sidewalks, and finally, "go in and . . . tackle the entrances to the various buildings in the town.") By Friday morning, November 24, the sidewalks at the health center had been plowed and sanded. The ramp had been shovelled, but it had not been sanded.

The plaintiff and his daughter arrived at the health center at approximately 8:30 A.M. on November 24. He parked his automobile on Pierce Street with the motor running near the ramp and helped his daughter, who was on crutches, into the building by way of the ramp. The plaintiff noted that the

ramp was very icy and slippery. The plaintiff acknowledged that, as a result of the storm, "not only had there been snow . . . there had also been a coating of ice on everything." After the plaintiff had seen his daughter safely into the health center, he turned and returned down the ramp. As he neared the bottom of the ramp, he fell on the ice and was injured.

The duty owed by a property owner to someone lawfully on the owner's premises is one of reasonable care in the circumstances. See *Mounsey* v. *Ellard*, 363 Mass. 693, 707-708 (1973). In our most recent decision addressing an owner's duty with regard to snow and ice, we made clear that this duty is not violated by a failure to remove a natural accumulation of snow or ice. *Aylward* v. *McCloskey*, 412 Mass. 77, 80 (1992). We indicated in *Aylward* that "under Massachusetts law, landowners are liable only for injuries caused by defects existing on their property and . . . the law does not regard the natural accumulation of snow and ice as an actionable property defect, if it regards such weather conditions as a defect at all." *Id.* at 79. Liability is possible only "in circumstances where some act or failure to act has changed the condition of naturally accumulated snow and ice, and the elements alone or in connection with the land become a hazard to lawful visitors." *Id.* at 80 n.3. The plaintiff argues that liability on the part of the town was created when its employees shovelled the snow to expose an icy surface on the ramp, and failed to remove the ice. The evidence pertaining to both of these circumstances is not sufficient to establish liability.

1. As the plaintiff points out, the jury could have found that the town's employees, after shovelling snow from the ramp, left it in an icy condition. However, there was no evidence that the shovelling had *created* the ice on the ramp. At most, the plaintiff's evidence tended to show that the shovelling of the ramp by the town's employees exposed ice that was already there.[1] There was also no evidence that the employees' shovelling altered the condition of the ice on the

---

[1] Although the plaintiff's attorney asserted in her closing argument that "the ice developed as a result of bad shoveling," there was no evidence to

ramp. Liability does not attach, in circumstances like those presented here, when a property owner removes a portion of an accumulation of snow or ice and a person is injured by slipping and falling on the remainder because the snow or ice remains as a natural accumulation.[2] See *Collins* v. *Collins*, 301 Mass. 151 (1938) (no liability where plaintiff slipped on patch of ice in a path that had been shovelled in the snow). See also *Cooper* v. *Braver, Healey & Co.*, 320 Mass. 138, 139-140 (1946) (no liability where snow is shovelled from walkway, and then melts to form ice); *Mahoney* v. *Perreault*, 275 Mass. 251, 252-253 (1931) (same).

2. The plaintiff also argues that, even if the actions by the town's employees did not worsen the icy condition of the ramp, the town had an affirmative obligation to remove or sand the ice on the ramp. As has been discussed, however,

that effect. On the contrary, on cross-examination the plaintiff testified, as had been noted, that the storm itself had left the coating of ice:

DEFENSE COUNSEL: "And there is no question that as a result of that storm [of November 23], not only had there been snow but there had also been a coating of ice on everything?"

THE PLAINTIFF: "Right."

[2]The plaintiff maintains that "the shovelling had exposed large patches of ice on the ramp." The plaintiff's attorney made similar references to "mounds or patches of ice" on the ramp in her closing argument, where she went on to describe the situation as one in which "you have an area that had been shoveled, but not properly shoveled so that patches of ice were created. They ran the shovel down but they didn't go close to the cement." It seems clear from these statements that the plaintiff's argument is merely that the employees' shovelling may have been incomplete, not that it left any ice that did not come there naturally. The plaintiff's brief on appeal contains no express contention that there were unusual conditions in the ice at the time the plaintiff fell, nor can we detect any such conditions from the photograph of the ramp admitted in evidence.

This case is, therefore, unlike other cases where there was evidence from which the jury could find that the snow or ice that created the hazard was no longer in its natural state. See *Delano* v. *Garrettson-Ellis Lumber Co.*, 361 Mass. 500, 501 (1972) (" 'muddy ice,' with tire marks and ruts three and four inches deep, covered and obscured by about half an inch of powdery snow"); *Thornton* v. *First Nat'l Stores, Inc.*, 340 Mass. 222, 224 (1960) (ice described as "about an inch and a half to two and a half inches thick 'frozen solid to the step' "); *Phipps* v. *Aptucxet Post #5988 V.F.W. Bldg. Ass'n, Inc.*, 7 Mass. App. Ct. 928, 929 (1979) ("footprints . . . and ruts like automobile tire tracks that had been frozen").

the evidence indicates only that the ice on which the plaintiff fell was a natural accumulation. The situation is, therefore, governed by the *Aylward* decision, where there can be no liability because, as was said in *Aylward, supra* at 79, "naturally accumulated snow and ice on property does not per se constitute a defective condition."[3]

3. The plaintiff also suggests that an obligation to remove the ice from the ramp was independently created because the lower portion of the ramp had no railings. As support for this contention, the plaintiff relies on the statement in *Aylward* v. *McCloskey, supra* at 80 n.3, that "in circumstances where some act or failure to act has changed the condition of naturally accumulated snow and ice, *and* the elements alone or in connection with the land become a hazard to lawful visitors, then a defect may exist, creating liability in the owner or occupier" (emphasis added). *Id.* at 80 n.3. But in his analysis, the plaintiff replaces the emphasized "and" in this statement with "or," and argues that "[u]nder either set of circumstances," a jury could find liability. We disagree.

The quoted statement from *Aylward* creates no new basis for liability but only emphasizes the traditional rule that liability may arise when negligence of a property owner or occupier permits an unnatural and dangerous condition of snow

---

[3]We are not persuaded by the decisions referred to by the plaintiff that there was an obligation to remove or to sand the ice on the ramp even though it constituted a natural accumulation. Some of these decisions involved snow and ice conditions which could be found to have become unnatural due to the passage of time. See *Willett* v. *Pilotte,* 329 Mass. 610, 613 (1953); *Mansfield* v. *Spear,* 313 Mass. 685, 687 (1943). The decisions cited in *Yanowitz* v. *Augenstern,* 343 Mass. 513, 514 (1962), indicate that that case is also in the same category, although the court does not expressly discuss the condition that resulted in the plaintiff's injury in terms of a natural or unnatural accumulation.

Finally, on this point, the plaintiff points out that there was testimony that the town's policy was to shovel *and* to sand the ramp and similar walkways; he does not argue on appeal that the failure to conform to this policy is evidence of negligence. Cf. *Gamere* v. *236 Commonwealth Ave. Condominium Ass'n,* 19 Mass. App. Ct. 359, 361-362 (1985) (statute or ordinance requiring that property owners remove snow and ice is for benefit of community at large, not persons injured by fall; any duty runs to municipality).

and ice to occur either by itself or in connection with some other defect on the property.

In conclusion, there was no evidence from which the jury could reasonably have concluded that an act or omission by the town changed the condition of the ice on which the plaintiff fell from its natural state. Because such a conclusion is necessary in order to find liability, judgment for the town was required. The order denying the town's motion for judgment notwithstanding the verdict, and the judgment, are reversed. Judgment is to be entered for the town.

*So ordered.*